IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KERRY K. LONG, | ) | CIVIL NO. 10-00359 JMS/KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING |
| | ) | DEFENDANTS DEUTSCHE BANK |
| vs. | ) | NATIONAL TRUST COMPANY, |
| | ) | AS TRUSTEE FOR SOUNDVIEW |
| DEUTSCHE BANK NATIONAL | ) | HOME LOAN TRUST 2006 WF-1 |
| TRUST COMPANY AS TRUSTEE | ) | AND WELLS FARGO BANK |
| FOR SOUNDVIEW HOME LOAN | ) | N.A.'S MOTION TO DISMISS |
| TRUST 2006 WF-1; WELLS FARGO | ) | |
| BANK N.A.; and DOES 1-20, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING DEFENDANTS DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR SOUNDVIEW HOME LOAN TRUST 2006 WF-1 AND WELLS FARGO BANK N.A.'S MOTION TO DISMISS

## I. INTRODUCTION

On June 29, 2010, Plaintiff Kerry K. Long ("Plaintiff") filed this

action alleging claims against Defendants Deutsche Bank National Trust Company,

as Trustee for Soundview Home Loan Trust 2006 WF-1 ("Deutsche Bank"), and

Wells Fargo Bank ("Wells Fargo") (collectively, "Defendants") asserting federal

and state law claims stemming from a mortgage transaction concerning real

property located at 15-144, 31st Avenue, Keeau, Hawaii 96749 (the "subject

property").

After this court granted in part and denied in part Defendants' Motion

for Judgment on the Pleadings with leave to amend, *see Long v. Deutsche Bank*

*Nat'l Trust Co.*, 2011 WL 2650219 (D. Haw. July 5, 2011), Plaintiff filed a First

Amended Complaint ("FAC").  Currently before the court is Defendants' Motion

to Dismiss the FAC, in which they argue that the FAC fails to state a cognizable

claim.  Based on the following, the court GRANTS Defendants' Motion to Dismiss

the FAC.

## II. <u>BACKGROUND</u>

### A.    Factual Background

As alleged in the FAC, in June 2006, Plaintiff sought to purchase the

subject property and therefore applied for a thirty-year fixed rate mortgage loan for

$416,000 with Wells Fargo.  Doc. No. 47, FAC ¶¶ 17-19.  In the loan application

process, Wells Fargo allegedly (1) completed the application without providing or

showing Plaintiff a copy; (2) failed to explain the contents of the application to

Plaintiff; (3) concealed from Plaintiff that it had significantly overstated Plaintiff's

income to increase his chance of qualifying for a loan he would not ordinarily

qualify for; and (4) concealed that the loan was unaffordable once the payments

were amortized over the life of the loan.  *Id.* ¶¶ 20-25.  Plaintiff never knowingly

signed the loan application that overstated his income, and had answered all of

Wells Fargo's questions and provided all requested documents.  *Id.* ¶¶ 26-27.

Wells Fargo and Plaintiff ultimately entered into a loan on or about July 5, 2006.  *Id.* ¶ 34; *see also* Defs.' Ex. A.[1]  In entering into the loan, Wells Fargo allegedly (1) failed to verify Plaintiff's income and employment and otherwise use due diligence to verify that Plaintiff qualified for the loan; (2) offered Plaintiff a stated income loan even though Plaintiff was employed; (3) did not explain to Plaintiff that he could compare loan terms or purchase down the interest rate of the loan; (4) failed to provide Plaintiff a myriad of required documents including, among other things, a good faith estimate, a final HUD-1 Settlement Statement, the Servicing Disclosure Statement, and the Notice of Assignment, Sale or Transfer of Servicing Rights; (5) did not disclose and/or concealed from Plaintiff material terms of the loan including the interest rate, the

---

[1] Defendants request the court to take judicial notice of the mortgage, which is a public document recorded in the Bureau of Conveyances.  In opposition, Plaintiff asserts that he "disputes the authenticity and legitimacy" of this document, and that it is "inaccurate because a true chain of title of the note and mortgage has not been established."  *See* Doc. No. 62, Pl.'s Opp'n at 10.  Plaintiff's objection lacks merit -- Plaintiff offers no explanation for why he disputes the authenticity of this publicly-recorded document, and whether the chain of title is established does not affect the authenticity of this document.  Indeed, the FAC asserts that Plaintiff entered into a mortgage with Wells Fargo on July 5, 2006.  Doc. No. 47, FAC ¶ 34.  The court takes judicial notice of the mortgage -- it is a matter of public record.  *See United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) ("Although, as a general rule, a district court may not consider materials not originally included in the pleadings in deciding a Rule 12 motion, Fed. R. Civ. P. 12(d), it 'may take judicial notice of matters of public record' and consider them without converting a Rule 12 motion into one for summary judgment." (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).

adjustable interest rate, the actual anticipated interest, the fees and costs of the

loan, and his right to rescind the loan; (6) failed to give Plaintiff a reasonable time

to read and understand the loan documents; and (7) failed to disclose that it

intended to transfer, sell, or assign the note and mortgage to other lenders.  Doc.

No. 47, FAC ¶¶ 29-38.

Although the FAC does not explain Deutsche Bank's role in this

transaction, the FAC states that "[Deutsche Bank] alleges it was subsequently

assigned the note and mortgage," and that it had a duty to verify Plaintiff's income

and employment when purchasing the loan from Wells Fargo.  *Id.* ¶¶ 13, 29.

**B.     Procedural Background**

On June 29, 2010, Plaintiff filed his Complaint.  On July 26, 2011, the

court granted in part and denied in part Defendants' Motion for Judgment on the

Pleadings (the "July 26, 2011 Order"), *see Long*, 2011 WL 2650219.  As a result,

on July 26, 2011, Plaintiff filed his FAC.  The FAC asserts claims against

Defendants entitled (1) Violations of Real Estate Settlement Procedures Act (Count

I); (2) Violation of Fair Credit Reporting Act (Count II); (3) Fraudulent

Misrepresentation (Count III); (4) Breach of Fiduciary Duty (Count IV);

(5) Unjust Enrichment (Count V); (6) Civil Conspiracy and Aiding and Abetting

(Count VI); (7) Complaint to Quiet Title (Count VII); (8) Misrepresentation as to

the Status of Defendants to Conduct Business in the State of Hawaii and Otherwise

Enforce Any Alleged Note and/or Mortgage (Count VIII); (9) Violation of Fair

Debt Collection Practices (Count IX); (10) Unconscionability (Count X); (11)

Unfair and Deceptive Acts or Practices (Count XI); (12) Failure to Act Consistent

with the Implied Duty of Good Faith and Fair Dealing (Count XII); (13) Negligent

and/or Intentional Infliction of Emotional Distress (Count XIII); (14) Violation of

the Gramm-Leach-Bliley Act (Count XIV); and (15) Violation of the Hawaii

Constitutional Right of Privacy (Count XV).

On August 9, 2011, Defendants filed their Motion to Dismiss.

Plaintiff filed an Opposition on October 3, 2011,[2] and Defendants filed a Reply on

October 11, 2011.  A hearing was held on October 17, 2011.

///

///

///

---

[2]  Plaintiff's Opposition was due by September 26, 2011, and Plaintiff's counsel, Robin Horner, has been sanctioned in other cases before this court for failure to meet deadlines and his obligations before this court.  *See, e.g.*, *Rey v. Countrywide Home Loans, Inc*., 2011 WL 4103704 (D. Haw. Sept. 13, 2011); *Saulsbury v. Bank of Am.*, Civ. No. 11-00138 JMS/KSC, Doc. No. 51 (Sept. 27, 2011); *Enriquez v. Aurora Loan Servs., LLC*, Civ. No. 10-00281 SOM/KSC, Doc. No. 33 (Apr. 13, 2011).  In response to a September 28, 2011 Entering Order requiring Horner to explain his latest failure to meet his obligations, Horner apologized for missing this deadline and stating that he wished to file an Opposition.  The court therefore granted Plaintiff leave to file his Opposition late.  Although the court allowed him to file his papers late in this action, Horner is warned that he is on thin ice.  Future failure to follow court rules and deadlines may again result in significant sanctions.

## III.  <u>STANDARDS OF REVIEW</u>

**A.      Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief.  *Id.* at 1950.

6

**B.     Federal Rule of Civil Procedure 9(b)**

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  "Rule 9(b) requires particularized allegations of the circumstances *constituting* fraud."  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc), *superseded on other grounds by* 15 U.S.C. § 78u-4.

In their pleadings, Plaintiffs must include the time, place, and nature of the alleged fraud; "mere conclusory allegations of fraud are insufficient" to satisfy this requirement.  *Id.* (citation and quotation signals omitted).  Where there are multiple defendants, Plaintiffs cannot "lump multiple defendants together" and instead must "differentiate their allegations [between defendants]."  *Destfino v. Kennedy*, 630 F.3d 952, 958 (9th Cir. 2011) (citation omitted).  However, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally."  Fed. R. Civ. P. 9(b); *see also In re GlenFed, Inc. Sec. Litig*, 42 F.3d at 1547 ("We conclude that plaintiffs may aver scienter . . . simply by saying that scienter existed."); *Walling v. Beverly Enter.*, 476 F.2d 393, 397 (9th Cir. 1973) (Rule 9(b) "only requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations."

(citations omitted)).

A motion to dismiss for failure to plead with particularity is the functional equivalent of a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). In considering a motion to dismiss, the court is not deciding the issue of "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

## IV.  DISCUSSION

Defendants seek dismissal of all Counts of the FAC for failure to state a claim upon which relief can be granted. The court addresses each Count of the FAC in turn.

**A.     Violations of the Real Estate Settlement Procedures Act (Count I)**

The FAC asserts that Wells Fargo violated the Real Estate Settlement Procedures Act ("RESPA"), by "accepting charges for rendering of real estate services which were in fact charges for other than services actually performed" in violation of 12 U.S.C. § 2607, Doc. No. 47, FAC ¶ 41, and by failing to timely and promptly notify Plaintiff of the "assignment or sale or transfer of the alleged note and/or mortgage for the subject property" in violation of 12 U.S.C. § 2605. *Id.*

¶ 45.   The FAC further asserts that both Wells Fargo and Deutsche Bank violated

12 U.S.C. § 2605(e) by failing to respond to Plaintiff's request for Defendants to

"resolve servicing issues."  *Id.* ¶ 43.  Plaintiff's RESPA claim fails for several

reasons.

### 1.   *Failure to Allege Damages*

All of the FAC's allegations of RESPA violations fail because

Plaintiff has not alleged any actual damages.  Pursuant to 12 U.S.C. § 2605(f)(1),

Plaintiff has a burden to plead and demonstrate he has suffered damages.

Specifically, § 2605(f)(1) provides:

> Whoever fails to comply with any provision of this
> section shall be liable to the borrower for each such
> failure in the following amounts:
> (1)  Individuals
>       In the case of any action by an individual, an
> amount equal to the sum of --
>       (A) any actual damages to the borrower as a result
> of the failure; and
>       (B) any additional damages, as the court may
> allow, in the case of a pattern or practice of
> noncompliance with the requirements of this section, in
> an amount not to exceed $1,000.

Because damages are a necessary element of a RESPA claim, failure to plead

damages is fatal to a RESPA claim.  *See, e.g.*, *Esoimeme v. Wells Fargo Bank*,

2011 WL 3875881, at *14 (E.D. Cal. Sept. 1, 2011) (dismissing claim where the

plaintiff failed to "allege any pecuniary loss from defendant's alleged failure to

respond to the QWR"); *Soriano v. Countrywide Home Loans, Inc.*, 2011 WL 1362077, at *6 (N.D. Cal. Apr. 11, 2011) (reasoning that "even if a RESPA violation exists, Plaintiff must show that the losses alleged are causally related to the RESPA violation itself to state a valid claim under RESPA"); *Shepherd v. Am. Home Mortg. Servs.*, 2009 WL 4505925, at *3 (E.D. Cal. Nov. 20, 2009) ("[A]lleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiff must, at a minimum, also allege that the breach resulted in actual damages." (quoting *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D. N.J. 2006))).

Although the FAC alleges in general that Defendants are liable to Plaintiff for damages, *see* Doc. No. 47, FAC ¶¶ 42, 44, 46, it fails to allege that Plaintiff suffered any actual damages *as a result* of the alleged RESPA violations. *See Shepherd*, 2009 WL 4505925, at *3. Further, the FAC's assertion that Plaintiff was forced to hire counsel, *see* Doc. No. 47, FAC ¶ 46, does meet this requirement -- attorneys' fees are not "actual damages" as contemplated by § 2605(f)(1) and instead are separately enumerated as recoverable losses in § 2605(f)(3). *See, e.g.*, *Luciw v. Bank of Am., N.A.*, 2010 WL 3958715, at *5 (N.D. Cal. Oct. 7, 2010) ("[A]ttorneys' fees typically are not considered 'actual damages,' and other district courts have rejected similar arguments."); *Allen v. United Fin. Mortg. Corp.*, 660

F. Supp. 2d 1089, 1097 (N.D. Cal. 2009) (concluding that attorneys fees' are not a "pecuniary loss" sufficient for purposes of 12 U.S.C. § 2605(f)(1)).  On this basis alone, Plaintiff's RESPA claim fails.

In opposition, Plaintiff asserts that he seeks "actual damages paid in fighting a fraudulent and deceptive foreclosure."  Doc. No. 62, Pl.'s Opp'n at 3. No such allegations are included in the FAC, and even if included, such allegations would not establish damages caused as a result of RESPA violations -- Plaintiff fails to explain how any RESPA violation would cause foreclosure of the subject property.  In sum, Plaintiff has failed to allege a necessary element of his RESPA claims.

### 2.   *12 U.S.C. § 2607*

Plaintiff's claim that Wells Fargo violated 12 U.S.C. § 2607 by "accepting charges for rendering of real estate services which were in fact charges for other than services actually performed," Doc. No. 47, FAC ¶ 41, fails for two reasons.

First, Plaintiff has failed to state a plausible violation of § 2607, which prohibits the acceptance of "any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be

referred to any person."  In other words, a RESPA violation occurs when a party

receives a fee for providing a referral regarding a mortgage loan.  No such

allegations are included the FAC.

Second, as the court previously explained in its July 5, 2011 Order,

§ 2607 is subject to a one-year statute of limitations, which starts at the date of the

violation.  *See Long*, 2011 WL 2650219, at *5 (quoting 12 U.S.C. § 2614).  Any

alleged illegal kickback was received during the consummation of the loan, and the

FAC fails to allege any facts suggesting that equitable tolling might apply.

Plaintiff's RESPA claim for violation of § 2607 is untimely.

### 3.     *Failure to Notify Plaintiff of Transfer of Note and Mortgage*

The FAC's assertion that Wells Fargo failed to timely and promptly

notify Plaintiff of the "assignment or sale or transfer of the alleged note and/or

mortgage for the subject property," Doc. No. 47, FAC ¶ 45, does not constitute a

RESPA violation.  RESPA governs the notice requirements where loan servicing is

assigned, sold, or transferred, *see* 12 U.S.C. § 2605, but does not govern notice

requirements where a note or mortgage is transferred.  Plaintiff cannot base a

RESPA violation on this allegation.

In opposition, although not clear, Plaintiff apparently asserts that he is

alleging a violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(g),

which provides:

> [N]ot later than 30 days after the date on which a
> mortgage loan is sold or otherwise transferred or
> assigned to a third party, the creditor that is the new
> owner or assignee of the debt shall notify the borrower in
> writing of such transfer, including (A) the identity,
> address, telephone number of the new creditor; (B) the
> date of transfer; (C) how to reach an agent or party
> having authority to act on behalf of the new creditor;
> (D) the location of the place where transfer of ownership
> of the debt is recorded; and (E) any other relevant
> information regarding the new creditor.

Regardless of whether Plaintiff could have potentially asserted a violation of TILA,

the FAC does not include this allegation.  Further, Plaintiff included a TILA claim

in his original Complaint, which was dismissed with leave to amend.  *See Long*,

2011 WL 2650219, at *4.  The July 5, 2011 Order expressly warned Plaintiff that

"[a]ny cause of action that was raised in the original Complaint is waived if it is

not raised in the Amended Complaint."  *Id.* at *10.  Plaintiff chose not to plead a

TILA claim.  Such a claim has been waived.[3]

---

[3]  In any event, Plaintiff could not state a 15 U.S.C. § 1641(g) claim against the original owner of the note and mortgage, Wells Fargo.  Such a claim could only apply against the assigned owner of the note and mortgage, Deutsche Bank.  *See Nicosia v. Wells Fargo Bank*, 2010 WL 4269279, at *2 (N.D. Cal. Oct. 25, 2010).  As stated above, the FAC fails to allege any facts regarding Deutsche Bank.  It alleges only -- in a RESPA context -- that "WELLS failed to timely and promptly notify LONG of the assignment or sale or transfer of the alleged note and/or mortgage[.]"  Doc. No. 47, FAC ¶ 45.

### 4.    *12 U.S.C. § 2605(e)*

Finally, Plaintiff's assertion that Defendants violated 12 U.S.C.

§ 2605(e) by failing to respond to a request by Plaintiff for them to "resolve

servicing issues," Doc. No. 47, FAC ¶ 43, fails to state a viable claim.   RESPA

provides that "[i]f any servicer of a federally related mortgage loan receives a

qualified written request [("QWR")] from the borrower (or an agent of the

borrower) for information relating to the servicing of such loan, the servicer shall

provide a written response acknowledging receipt of the correspondence within 20

days[.]"[4]   12 U.S.C. § 2605(e)(1)(A).   "Servicing" is defined as:

> receiving any scheduled periodic payments from a
> borrower pursuant to the terms of any loan, including
> amounts for escrow accounts described in section 2609
> of this title, and making the payments of principal and
> interest and such other payments with respect to the
> amounts received from the borrower as may be required
> pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3).   After receiving the QWR, within sixty days, the loan

---

[4] A QWR is defined as:

> a written correspondence, other than notice on a payment coupon
> or other payment medium supplied by the servicer, that:
> (i) includes, or otherwise enables the servicer to identify, the name
> and account of the borrower; and (ii) includes a statement of the
> reasons for the belief of the borrower, to the extent applicable, that
> the account is in error or provides sufficient detail to the servicer
> regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

14

servicer must either correct the borrower's account or, after conducting an

investigation, provide the borrower with a written explanation of: (1) why the

servicer believes the account is correct; or (2) why the requested information is

unavailable.  *See* 12 U.S.C. § 2605(e)(2).

      The FAC vaguely asserts that Plaintiff "submitted a request for

information and a request that [Defendants] resolve servicing issues."  Doc. No.

47, FAC ¶ 43.  This allegation is insufficient to establish that Plaintiff made an

actual QWR -- the FAC fails to include sufficient facts to establish that Plaintiff's

communication(s) to any of the Defendants was written or concerned servicing of

his loan as defined by RESPA and triggered Defendants' duty to respond.  *See*

*Lettenmaier v. Fed. Home Loan Mortg. Corp*., 2011 WL 3476648, at *12 (D. Or.

Aug. 8, 2011) (dismissing RESPA claim where "plaintiffs fail to attach a copy of

their correspondence to the Complaint or to allege facts showing that the

communication concerned servicing of the loan as defined by the statute");

*Manzano v. Metlife Bank N.A.*, 2011 WL 2080249, at *7 (E.D. Cal. May 25, 2011)

(Plaintiff "cannot simply allege in conclusory fashion that the written

correspondence constituted QWRs."); *Aguilar v. Cabrillo Mortg*., 2010 WL

1909547, at *2-3 (S.D. Cal. May 11, 2010) ("Although Plaintiffs correctly argue

that they have no affirmative duty to attach a copy of the letter to the SAC, they

still must allege sufficient facts to demonstrate that the letter sent to [defendant] triggered the procedures set forth in 12 U.S.C. § 2605(e).").

The court therefore GRANTS Defendants' Motion to Dismiss Plaintiff's RESPA claim.

**B.     Violation of Fair Credit Reporting Act (Count II)**

Defendants argue that Count II fails to state a cognizable claim; in opposition, Plaintiff asserts that he "withdraws its [sic] FCRA claim."  Doc. No. 62, Pl.'s Opp'n at 7.  The court therefore GRANTS Defendants' Motion to Dismiss Count II.

**C.     Fraudulent Misrepresentation (Count III)**

Count III alleges that Wells Fargo "knowingly and intentionally concealed material information from [Plaintiff] which is required by federal statutes and regulations to be disclosed[.]"  Doc. No. 47, FAC ¶ 53.  The misrepresentations "include but are not limited to, the following:"

> a.   Misrepresenting Plaintiff's income;
> b.   Misrepresenting and/or concealing the failure of Lender or its predecessors and/or its employees to follow usual and customary underwriting guidelines to qualify Plaintiff for a loan;
> c.   Misrepresenting and/or concealing the true terms of the loan;
> d.   Misrepresenting and/or concealing the true amount of interest Plaintiff would have to pay over the life of the loan;

16

e.     Concealing that property values were declining
       and would likely continue to do so in the
       foreseeable future;

f.     Concealing that Plaintiff would likely experience
       mortgage payment distress and had a high
       likelihood of defaulting on the note;

g.     Concealing that there would not be sufficient
       equity in the Property to refinance the loan;

h.     Concealing that WELLS and DEUTSCHE would
       wrongfully, improperly, and illegally report
       negative information as to the LONG [sic] to one
       of [sic] more credit reporting agencies, resulting in
       LONG having negative information on his credit
       reports and the lowering of his FICO scores such
       that he would not be able to qualify in the future to
       refinance the subject loan.

*Id.* ¶ 55.

These allegations do not meet Plaintiff's burden under Rule 9(b) --

especially as to Deutsche Bank, which is mentioned only in paragraph 53h. *See,*

*e.g.*, *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1042 (9th Cir.

2010) (stating that plaintiffs "must allege the time, place, and content of the

fraudulent representation; conclusory allegations do not suffice" (citation

omitted)).  Instead, as with other complaints filed by Plaintiff's counsel, "these

allegations merely give lip service to the basic elements of a fraud . . . and fail to

assert 'particularized allegations of the circumstances constituting fraud' . . .  such

as the time, place, and nature of the alleged actions, and how each Defendant

participated in the fraud."  *Chun v. Accredited Home Lenders, Inc.*, 2011 WL

17

3273120, at *4 (D. Haw. July 29, 2011) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42

F.3d at 1547-48) (dismissing complaint filed by Plaintiff's counsel making similar

allegations of fraud); *see also Enriquez v. Countrywide Home Loans*, FSB, --- F.

Supp. 2d ----, 2011 WL 3861402, at *18 (D. Haw. Aug. 31, 2011) (also dismissing

complaint with nearly identical allegations of fraud for failure to meet Rule 9(b)'s

requirements).

　　　　Plaintiff argues that the FAC sufficiently alleges that "Wells as the

origination lender falsified the [loan] application and encouraged and accepted an

overstated appraisal to qualify Plaintiff for a loan he could not afford, and then

concealed this information[.]"  Doc. No. 62, Pl.'s Opp'n at 7.[5]  According to the

FAC, "WELLS and/or its agents and/or employees" significantly overstated

Plaintiff's income on his loan application, did not inform him it was doing so, and

did so "in an effort to increase [Plaintiff's] chances of qualifying for a loan he

ordinarily would not qualify for."  Doc. No. 47, FAC ¶¶ 22-23.  It further alleges

that "WELLS and/or its agents and/or employees concealed the fact that LONG'S

income was overstated."  *Id.* ¶ 24.  And in its prior Order, the court found it

sufficient that the original Complaint alleged that Wells Fargo "falsely represented

---

[5]  This aspect of a fraud claim is directed only to Wells Fargo.  There are no allegations that subsequent holder Deusche Bank had any role whatsoever in inflating Plaintiff's income.

the amount of LONG's income and source of income on the loan application it prepared," *Long*, 2011 WL 2650219, at *6, and that Wells Fargo "without LONG's understanding, knowledge, consent and authority entered 'stated income' on the loan application that exceeded the actual income of LONG."  *Id.*

Certainly "falsely representing" the amount of a loan applicant's income, without the applicant's "understanding, knowledge, consent, and authority" is wrongful (and maybe fraudulent) conduct.  The circumstances, however, of whether such wrongful conduct can state a viable claim for fraudulent misrepresentation or fraudulent inducement will depend on *whose* conduct is at issue, *to whom* false representations were made, and under *what* circumstances.[6] This is precisely why a fraud-based claim must be pled with particularity.  The court's prior Order recognized that the original Complaint alleged wrongful, even potentially fraudulent conduct, but did not focus on all elements of a fraudulent misrepresentation claim.  In particular, Defendants now stress that the FAC fails to

---

[6] Normally, "the statements contained in a [loan application] are the applicant's own statements regarding his income."  *Infante v. Bank of Am. Corp.*, 680 F. Supp. 2d 1298, 1304 (S.D. Fla. 2009) (citation and internal quotation marks omitted).  Such statements are representations by the applicant -- *i.e.*, the plaintiff -- not by a lender, and thus cannot be the basis of a fraud claim by a plaintiff against that lender.  Here, however, the allegation is that a Wells Fargo agent or employee falsified the loan application's statements regarding income without Plaintiff's knowledge.  Essentially, the fraud theory appears to be not solely that the loan application itself is false, but that it was falsified without Plaintiff's knowledge by a Wells Fargo agent or employee, and that Plaintiff would not have entered into this transaction without such falsification.

state a claim because it lacks the required element of Plaintiff's reasonable

reliance. *See Shoppe v. Gucci Am., Inc.*, 94 Haw. 368, 386, 14 P.3d 1049, 1067

(2000) ("[A] party claiming fraud must establish the following elements: (1) false

representations were made by defendants, (2) with knowledge of their falsity (or

without knowledge of their truth or falsity), (3) in contemplation of plaintiff's

reliance upon these false representations, and (4) plaintiff did rely upon them.");

*Matusuura v. E.I. du Pont de Nemours & Co.*, 102 Haw. 149, 163, 73 P.3d 687,

701 (2003) ("[U]nder Hawai'i law, to prevail on a claim of fraudulent inducement,

plaintiffs must prove that their reliance upon a defendant's representations was

reasonable.").

        The reasonable reliance element is missing.  As pled, any falsification

by a Wells Fargo agent or employee "would have been intended to induce action

on the part of the *lender*, rather than [Plaintiff]." *Infante v. Bank of Am. Corp.*, 680

F. Supp. 2d 1298, 1304 (S.D. Fla. 2009) (quoting *Matthys v. Mortgage Elec.*

*Registration Sys., Inc.*, 2009 WL 3762632, at *2 (M.D. Fla. Nov. 10, 2009)).

There are no factual allegations indicating the fraudulent conduct was meant to

induce reliance on Plaintiff.  Plaintiff's theory is that he was unaware that his

income was inflated.[7]  Plaintiff admits he "never knowingly signed a copy of the loan application with the overstated income."  Doc. No. 47, FAC ¶ 26.  And he claims he was not shown the application prior to closing.  *Id.* ¶ 21.  But if he was unaware "of the use of an inflated income to qualify him for the loan, then he cannot possibly have relied on the misrepresentation."  *Oglesbee v. IndyMac Fin. Servs.*, 686 F. Supp. 2d 1313, 1316 (S.D. Fla. 2010) (citing *Infante*).  Thus, "Plaintiff has failed to adequately plead an intent on the part of [Wells Fargo] to induce Plaintiff to act on the misrepresentations contained in the [loan application]."  *Infante*, 680 F. Supp. 2d at 1304; *see also, e.g.*, *Yazdanpanah v. Sacramento Valley Mortg. Grp.*, 2009 WL 4573381, at *4 (N.D. Cal. Dec. 1, 2009) (dismissing fraud claim based on misrepresentations or nondisclosures of terms of home loan, reasoning that plaintiff "cannot claim that he reasonably relied on any misrepresentation or non-disclosure of the terms of his home loan because he signed the promissory note and deed of trust which set forth those terms expressly. . . . Plaintiff should have known the terms of the loan and cannot show reasonable reliance on any representation contrary to the express terms of the loan.").

---

[7]  If Plaintiff *did* know that the income was falsified on the application, he could not have relied on the misrepresentation.  *See Oglesbee v. IndyMac Fin. Servs.*, 686 F. Supp. 2d 1313, 1316 (S.D. Fla. 2010); *see also Battah v. ResMAE Mortgage Corp.*, 746 F. Supp. 2d 869, 875 (E.D. Mich. 2010) (reasoning that "it is absurd for a person to sue for fraud based on the claim that he reasonably relied on inflated statements regarding his own income on a loan application" where he knew the amounts were inflated).

21

At the oral hearing on the Motion, Plaintiff switched theories.  He argued -- for the first time -- that misrepresentation was done not by a Wells Fargo employee or agent, but by a "notorious" mortgage broker.  (Although not clear, the loan application indicates that "Aloha Mortgage & Finance, Ltd" may have been the entity that interviewed Plaintiff and completed the loan application.)  *See* Doc. No. 49, Defs.' Req. for Judicial Notice, Ex. B, at 3.  But the FAC only alleges that Wells Fargo -- and not a "notorious" broker -- perpetrated the fraud.  Count III plainly fails to state a claim, and is dismissed.

Given, however, that the record indicates the potential involvement of Aloha Mortgage & Finance, Ltd., it is unclear whether further amendment would truly be futile.  Although, as to Wells Fargo, it appears a viable fraud theory cannot be stated, the court will allow Plaintiff a final opportunity (within the confines of Rules 9(b) and 11) to attempt to state a claim.  Therefore, if Plaintiff wants to continue to pursue a fraud theory, Plaintiff may file a Motion for Leave to File a Second Amended Complaint as to fraud, addressing the factors in Federal Rule of Civil Procedure 15(a)(2).  Such a Motion must explain, under the particularity requirements of Rule 9(b), how Plaintiff states a cognizable claim for fraud.

Plaintiff is granted until November 4, 2011, to submit a motion that seeks permission to file a Second Amended Complaint.  The proposed Second

22

Amended Complaint must be attached to the Motion.  Plaintiff's counsel is further

reminded that he must have a good faith basis for bringing specific claims to avoid

possible sanctions.  *See, e.g., Holgate v. Baldwin*, 425 F.3d 671, 676-77 (9th Cir.

2005).  In other words, Plaintiff's counsel (not his staff) must examine the relevant

facts and tailor claims based on those facts.  If Plaintiff fails to file a Motion by

November 4, 2011, Count III will be dismissed with prejudice.

## D.     Breach of Fiduciary Duty (Count IV)

Count IV alleges that Wells Fargo owed Plaintiff a fiduciary duty as a

result of "contracting to provide mortgage loan services and a loan program to

LONG," where Plaintiff trusted Wells Fargo and was not in the mortgage services

business.  Doc. No. 47, FAC ¶ 61.  The FAC further asserts that Wells Fargo

breached that duty by "fraudulently inducing LONG to enter into a mortgage

transaction which was contrary to Plaintiff's stated intentions; contrary to

Plaintiff's interests; and contrary to the Plaintiff's preservation of his home."  *Id.*

¶ 62.

These allegations fail to state a claim against Defendants.  As

explained in *McCarty v. GCP Management, LLC*, 2010 WL 4812763 (D. Haw.

Nov. 17, 2010), this court follows the well-settled proposition that a borrower-

lender relationship is not fiduciary in nature absent some special circumstances.

See also *Anderson v. Cent. Pac. Home Loans, Inc*., 2011 WL 3439939, at *5 (D. Haw. Aug. 8, 2011) ("Unless a special relationship exists between a borrower and lender that elevates the lender's responsibility, the standard 'arms-length business relationship' applies." (citing *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 883 (9th Cir. 2007)); *Solomon v. E-Loan, Inc*., 2011 WL 1253840, at *7 (E.D. Cal. Mar. 30, 2011) ("The relationship between a lending institution and its borrower-client is not fiduciary in nature." (citing California law)).

The FAC alleges no "special circumstances" that might impose a fiduciary duty in this mortgage-lending situation against Defendants.  Rather, the only allegation the FAC includes is that Plaintiff trusted Wells Fargo because Plaintiff "was not [an] investment banker, securities dealer, mortgage lender, mortgage broker, or mortgage lender."  Doc. No. 47, FAC ¶ 61.  This allegation, however, simply suggests a normal arms-length lender-borrower relationship.  *See, e.g.*, *Anderson*, 2011 WL 3439939, at *6 (dismissing claim because "Plaintiff makes no allegations suggesting that his relationship to Defendants is anything other than an ordinary, arms-length, lender-borrower relationship"); *Enriquez*, 2011 WL 3861402, at *21 (dismissing claim where Plaintiff failed to plead facts "regarding an inequality of bargaining power that would constitute special circumstances beyond the traditional borrower-lender relationship"); *see also*

*Fujikawa v. One West Bank, FSB*, 2011 WL 3021331, at *6 (D. Haw. July 21, 2011) ("Bald assertions in the Complaint that a fiduciary duty exists fail to satisfy the requirements of Federal Rules of Civil Procedure 8 and 12(b)(6)."); *Goya v. Wells Fargo Bank, N.A.*, 2011 WL 2559830, at *3 (D. Haw. June 27, 2011) ("Simply stating that Defendants 'breached their fiduciary duties to Plaintiff' is insufficient to establish the existence of a fiduciary duty.").

In opposition, Plaintiff argues that the court should take into account the "realities" of mortgage loan transactions where, after a borrower enters into a loan, the creditor may securitize and/or sell the loan in complex transactions, and the borrower is unable to understand these transactions.  Doc. No. 62, Pl.'s Opp'n at 9.  The court rejects this argument.  Whatever a creditor does with a loan after it is consummated does not change that the loan transaction itself is a basic arm's length transaction between two parties.  That a creditor may subsequently sell and/or securitize the loan does not suggest any fiduciary duty to the borrower.

Accordingly, the court GRANTS Defendants' Motion on Plaintiff's breach of fiduciary duty claim.

**E.    Unjust Enrichment (Count V)**

The FAC asserts that Defendants have an implied duty to deal with Plaintiff in good faith and in a fair manner, and that they should not be able to

25

"retain the benefits from their actions of charging a higher interest rate, fees,

rebates, kickbacks, and enjoying profits, from the wrongful disclosure of

confidential financial information and selling or re-selling mortgages and notes

using plaintiff's identity, credit score and reputation without consent . . ."  Doc.

No. 47, FAC ¶ 68.  The FAC further asserts that Defendants have been unjustly

enriched at the expense of Plaintiff and through "receipt of payment from third

parties . . . ."  *Id.* ¶¶ 69-70.

        The conclusory allegations of the FAC are insufficient to suggest a

claim for relief that is plausible on its face.  To bring an unjust enrichment claim,

Plaintiff must prove two elements: "(a) receipt of a benefit without adequate legal

basis by Defendants; and (b) unjust retention of that benefit at the expense of

Plaintiffs."  *Porter v. Hu*, 116 Haw. 42, 53, 169 P.3d 994, 1005 (Haw. App. 2007)

(citing *Small v. Badenhop*, 67 Haw. 626, 636, 701 P.2d 647, 654 (1985)).  Further,

there must be an "absence of an adequate remedy at law."  *Id.* (citations omitted).

But the FAC makes wholly unclear how each Defendant allegedly benefitted

and/or participated in the mortgage loan transaction to receive benefits without

legal basis, or how the retention of those benefits are at the expense of Plaintiff.

The FAC therefore fails to provide fair notice to each Defendant regarding the

nature of Plaintiff's unjust enrichment claim.  *See, e.g.*, *Khomich v. Bank of Am.*,

*N.A.*, 2011 WL 1087858, at *8-9 (E.D. Cal. Mar. 23, 2011) (dismissing unjust enrichment claim based on alleged "higher interest rates, fees, rebates, kickbacks and profits, as well as payments from various third parties," because, among other reasons, plaintiff failed to "state any facts in support of the contention that Defendants received and retained benefits and payments to which they were not entitled"); *Sorrels v. J.P. Morgan Chase Nat'l Corp. Servs.*, 2011 WL 662980, at *6 (S.D. Cal. Feb. 14, 2011) (dismissing claim because "[t]he conclusory allegations plaintiffs[] provide do not show 'plausible liability' with respect to this claim"); *Gomez v. World Savings Bank FSB*, 2010 WL 5280004, at *5 (E.D. Cal. Dec. 13, 2010) ("[T]he FAC fails to allege which Defendants receive what monies and thus fails to provide fair notice of the nature of Plaintiff's unjust enrichment claim."); *Jacob v. Aurora Loan Servs.*, 2010 WL 2673128, at *4 (N.D. Cal. July 2, 2010) (rejecting as too vague to state a plausible claim allegations that Defendants were unjustly enriched by charging fees unrelated to the settlement of the plaintiff's loans, and by "charging a higher interest rate, fees, rebates, kickbacks, profits, and gains and YSP fee unrelated to the settlements [sic] services provided at closing").[8]

---

[8] Defendants also argue that this claim necessarily fails where there is an express contract.  The court agrees.  *See Amina v. WMC Mortg. Corp.*, 2011 WL 1869835, at *10 n.4 (D. Haw. May 16, 2011) ("[A]n unjust enrichment claim cannot lie where there is an express

(continued...)

The court therefore GRANTS Defendants' Motion to Dismiss

Plaintiff's unjust enrichment claim.

## F.    Civil Conspiracy and Aiding and Abetting (Count VI)

In support of the civil conspiracy claim, the FAC asserts that

Defendants

> agreed, between and among themselves, to engage in
> actions and a course of conduct designed to further an
> illegal act or accomplish an illegal act by unlawful
> means, and to commit one [or] more overt acts in
> furtherance of the conspiracy to defraud the Plaintiff by
> falsifying LONG's income, by overcharging principal,
> interest, taxes, insurance, and other fees.

Doc. No. 47, FAC ¶ 73.  The FAC further asserts that Defendants agreed "to

engage in the conspiracy to defraud for the common purpose of accruing economic

gains for themselves at the expense of and detriment to the Plaintiff."  *Id.*

¶ 74.

These allegations are insufficient to assert a claim for civil conspiracy.

Hawaii does not recognize an independent cause of action for civil conspiracy --

such theory of potential liability is derivative of other wrongs.  *See, e.g.*, *Weinberg*

--------

[8](...continued)
contract governing the relationship of the parties[.]" (citing *AAA Haw., LLC v. Haw. Ins. Consultants, Ltd.*, 2008 WL 4907976, at *3 (D. Haw. Nov. 12, 2008)).  Although such a basis of dismissal might not apply if the express contract is found void -- an issue the court need not reach -- there is no basis for finding the relevant contract in this case void.

*v. Mauch*, 78 Haw. 40, 49, 890 P.2d 277, 286 (1995); *Chung v. McCabe Hamilton & Renny Co.*, 109 Haw. 520, 530, 128 P.3d 833, 843 (2006). As explained above, Plaintiff has failed to state a cognizable claim against Defendants for fraud. Further, to the extent Plaintiff's civil conspiracy claim is premised on alleged fraud, Plaintiff must meet the heightened pleading requirements of Rule 9(b) in alleging a conspiracy. *See Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) ("Rule 9(b) imposes heightened pleading requirements where the object of the conspiracy is fraudulent." (citation and internal quotation marks omitted)). Plaintiff has failed to do so.

In his Opposition, Plaintiff mentions standards from a Civil Racketeer Influenced and Corrupt Organizations ("RICO") statutory context, allowing for treble damages and fees for engaging in commercial fraud. *See* 18 U.S.C. § 1964(c).  The FAC, however, does not mention the RICO statute at all. Moreover, the FAC plainly fails to allege facts that would constitute a "pattern of racketeering activity," a RICO "enterprise," or "racketeering activity." *See, e.g.*, *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987) ("Liability under § 1962(c) requires (1) the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.").

The court therefore GRANTS Defendants' Motion as to Plaintiff's

conspiracy claim.

## G.   Complaint to Quiet Title (Count VII)

Count VII alleges that Plaintiff owns the subject property and neither

"WELLS and/or DEUTSCHE have the right to enforce the loan for the subject

property or have the right to enforce any mortgage or lien on the property."  Doc.

No. 47, FAC ¶ 79.  Although not clear whatsoever, the FAC appears to assert that

Defendants do not have an interest in the subject property because the mortgage

loan was securitized.  *Id.* ¶ 80.  The FAC therefore seeks a declaration that Plaintiff

is "the rightful holders [sic] of title to the property . . . ."  *Id.* ¶ 85(b).

The court construes Plaintiff's claim as being brought under HRS

§ 669-1(a) ("[Quiet title] [a]ction may be brought by any person against another

person who claims, or who may claim adversely to the plaintiff, an estate or

interest in real property, for the purpose of determining the adverse claim.").

Plaintiff, however, has not alleged sufficient facts regarding the interests of various

parties to make out a cognizable claim for "quiet title."  Plaintiff has merely

alleged elements of § 669-1, and thus the Count fails to state a claim.  *See Iqbal*,

129 S. Ct. at 1949 ("A pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action'" is insufficient.).

Further, in order to assert a claim for "quiet title" against a mortgagee,

30

a borrower must allege he has paid, or is able to tender, the amount of

indebtedness.  "A basic requirement of an action to quiet title is an allegation that

plaintiffs 'are the rightful owners of the property, *i.e.*, that they have satisfied their

obligations under the deed of trust.'"  *Rosenfeld v. JPMorgan Chase Bank, N.A.*,

732 F. Supp. 2d 952, 975 (N.D. Cal. 2010) (quoting *Kelley v. Mortg. Elec.

Registration Sys.*, 642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009)).  "[A] borrower

may not assert 'quiet title' against a mortgagee without first paying the outstanding

debt on the property."  *Id.* (citations omitted).  Applying this law here, which the

court finds persuasive, Plaintiff has not indicated that he has paid his outstanding

loan balance, much less that he is able to do so.  In short, he fails to state a claim

for quiet title.

In opposition, Plaintiff argues that the mortgage transaction is void,

presumably due to the various alleged misdeeds by Wells Fargo.  *See* Doc. No. 62,

Pl.'s Opp'n at 12.  But even if the transaction were deemed void, it would be

deemed void pursuant to a separate claim (*e.g.*, violation of HRS Ch. 480), and not

a quiet title claim.

Plaintiff further argues that this claim is supported by the FAC's

allegations that the loan was securitized and that Deutsche Bank is not the true

owner of the mortgage loan.  *Id.*  Even if Deutsche Bank is not the true current

31

owner of the note, it does not change that Plaintiff entered into a mortgage with a lender -- Plaintiff would still be required to have paid or tendered the outstanding balance to be able to assert a "quiet title" claim as the rightful owner. *See Rosenfeld*, 732 F. Supp. 2d at 975.

The court therefore GRANTS Defendants' Motion as to Plaintiff's quiet title claim.

## H. Misrepresentation as to the Status of Defendants to Conduct Business in the State of Hawaii and Otherwise Enforce Any Alleged Note and/or Mortgage (Count VIII)

Count VIII asserts that each Defendant was an agent of the other Defendant and that they "disguised" some "transaction" (presumably the mortgage loan transaction at issue in this action) so that "the real party in interest was not disclosed to the Plaintiff . . . and neither were the various fees, rebates, refunds, kickbacks, profits and gains of the various parties who have participated in this unlawful scheme." Doc. No. 47, FAC ¶¶ 87-88. The FAC further asserts that the real party in interest was not a financial institution and/or otherwise not authorized to do business in Hawaii as a banking, lending, or financial institution such that Defendants have sought payments and enforced the mortgage lien even without legal authority and in violation of trust laws. *Id.* ¶¶ 89-90.

These allegations are wholly inadequate to state a claim that is

32

plausible on its face.  The allegations are so conclusory and lacking in any detail that the court cannot determine the legal or factual basis of this claim.  As a result, these allegations certainly fail to give Defendants fair notice of the nature of Plaintiff's claim.  Further, to the extent this claim asserts that Defendants made any fraudulent misrepresentations (as implied by the title of the claim), the FAC fails to provide any of "the who, what, when, where, and how of the misconduct charged." *Vess*, 317 F.3d at 1106 (quotations omitted).  In short, this claim fails to state a cognizable claim for relief.

The court therefore GRANTS Defendants' Motion as to Count VIII.

## I.   Violation of Fair Debt Collection Practices (Count IX)

Count IX asserts that Defendants violated "Chapter 178 'Administrative Special Mortgage Recording Fee Guidelines'"[9] of the Hawaii Administrative Rules ("HAR") by failing to record a special mortgage recording fee with the Bureau of Conveyances when Plaintiff's mortgage was transferred. Doc. No. 47, FAC ¶ 92.  The FAC further asserts that Defendants violated the Fair Debt Collection Procedures Act ("FDCPA"), 15 U.S.C. § 1692e, by pursuing a foreclosure action without legal title to the subject property.  *Id.* ¶ 94.

---

[9]  Count IX apparently refers to HAR § 16-178-4, which provides that a special fee must be "submitted to the bureau of conveyances at the time of recondition of a mortgage or an amendment to a mortgage." *Id.* § 16-178-4(b)

Both of these claims fail to state a plausible claim.  As to Plaintiff's claim for violation of HAR § 16-178, *Franco v. Federal National Mortgage Ass'n*, 2011 WL 1842970, at *7 (D. Haw. May 13, 2011), explains that § 16-178 is no longer in effect, and in any event, did not allow for a private right of action:

> As for Chapter 16-178 of the Hawaii Administrative Rules, it has not been in effect since July 1, 2001.  *See* 2001 Haw. Sess. Laws 153 § 4 ("The special mortgage recording fee established under section 431P-16 Hawaii Revised Statutes, shall be suspended as of July 1, 2001, and shall remain suspended until reactivated by the Hawaii hurricane relief fund's board of directors."). Further, this administrative rule contains no private right of action [nor] does it suggest that any right was intended.  Indeed its underlying enabling statutes, Haw. Rev. Stat. §§ 431P-5, 431P-16 state that the Hawaii Hurricane Relief Fund has the power to enforce the regulation through fines and lawsuits.  Thus, even if applicable, Plaintiff could not sue to enforce it.  *See Reliable Collection Agency, Ltd. v. Cole*, 584 P.2d 107, 109-12 (Haw. 1978) (finding no private right of action to enforce a statute when statute provided for enforcement by government agency and contained no suggestion that private citizens could sue to enforce the statute); *see also Whitey's Boat Cruises, Inc. v. [Napali-Kauai] Boat Charters, Inc*., 132 P.3d 1213, 1224 (Haw. 2006) (finding no private right of action to sue competitor for violation of regulatory infractions because the "regulations were not promulgated with the objective of protecting business interests or competition").

*See also Caraang v. PNC Mortg.*, --- F. Supp. 2d ----, 2011 WL 2470637, at *15 (D. Haw. June 20, 2011) (rejecting similar claim on same basis).

34

As for Plaintiff's FDCPA claim, the FDCPA prohibits various

collection practices by "debt collectors" to, among other things, "eliminate abusive

debt collection practices."  *See* 15 U.S.C. § 1692(e) (describing the purpose of the

FDCPA).  The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate
> commerce or the mails in any business the principal
> purpose of which is the collection of any debts, or who
> regularly collects or attempts to collect, directly or
> indirectly, debts owed or due or asserted to be owed or
> due another.  Notwithstanding the exclusion provided by
> clause (F) of the last sentence of this paragraph, the term
> includes any creditor who, in the process of collecting his
> own debts, uses any name other than his own which
> would indicate that a third person is collecting or
> attempting to collect such debts.  For the purpose of
> section 1692f(6) of this title, such term also includes any
> person who uses any instrumentality of interstate
> commerce or the mails in any business the principal
> purpose of which is the enforcement of security
> interests[.]

15 U.S.C. § 1692a(6).  To be liable for a violation of the FDCPA, the defendant

must, as a threshold requirement, be a "debt collector" within the meaning of the

FDCPA.  *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995).

Like several of Plaintiff's other claims, the FDCPA claim is so

vaguely asserted that the court cannot discern what debt collection efforts are the

basis of this claim, or how each Defendant qualifies as a "debt collector."  For

example, it appears that Plaintiff bases this claim on the foreclosure of the subject

property, but there are no allegations regarding any foreclosure and in any event,

several courts have held that "activities undertaken in connection with a

nonjudicial foreclosure do not constitute debt collection under the FDCPA." *See,*

*e.g.*, *Gillespie v. Countrywide Bank FSB*, 2011 WL 3652603, at *2 (D. Nev. Aug.

19, 2011) (citing *Diessner v. Mortg. Elec. Registration Sys.*, 618 F. Supp. 2d 1184,

1188-89 (D. Ariz. 2009)); *McFadden v. Deutsche Bank Nat'l Trust Co.*, 2011 WL

3606797, at *10 (E.D. Cal. Aug. 16, 2011) (collecting cases).

        The FAC also fails to allege sufficient facts from which the court can

conclude that *any* of the Defendants are "debt collectors."  Instead, the FAC

paraphrases the definition of "debt collector" in 15 U.S.C. § 1692a(6), *see* Doc.

No. 47, FAC ¶ 95, but includes no factual allegations suggesting why and how

Defendants qualify as debt collectors.  Further, original lenders, creditors,

mortgage servicing companies, and mortgage brokers generally do not qualify as

"debt collectors."  *See, e.g.*, *Lyons v. Bank of Am., NA*, 2011 WL 3607608, at *12

(N.D. Cal. Aug. 15, 2011) ("The FDCPA  applies to those who collect debts on

behalf of another; it does not encompass creditors who are collecting their own

past due accounts."); *Radford v. Wells Fargo Bank*, 2011 WL 1833020, at *15 (D.

Haw. May 13, 2011) (collecting cases stating that original lenders and mortgage

servicing companies are not "debt collectors"); *Sakugawa v. IndyMac Bank, F.S.B.*,

2010 WL 4909574, at *5 (D. Haw. Nov. 24, 2010) (dismissing FDCPA claim

because the mortgage broker was not a "debt collector").

 The court therefore GRANTS Defendants' Motion to Dismiss

Plaintiff's FDCPA claim.

**J.     Unconscionability (Count X)**

 The FAC asserts that Plaintiff placed his trust and confidence in

Defendants, who held superior bargaining power over Plaintiff, and that "the terms

and conditions of the note and mortgage are unconscionable" because Defendants

did not fully inform Plaintiff of them.  *See* Doc. No. 47, FAC ¶¶ 99-101.

 "Unconscionability" is generally a defense to the enforcement of a

contract, and is not a proper claim for affirmative relief.  *See, e.g.*, *Gaitan v. Mortg.*

*Elec. Registration Sys.*, 2009 WL 3244729, at *13 (C.D. Cal. Oct. 5, 2009)

("Unconscionability may be raised as a defense in a contract claim, or as a legal

argument in support of some other claim, but it does not constitute a claim on its

own."); *Carey v. Lincoln Loan Co.*, 125 P.3d 814, 829 (Or. App. 2005)

("[U]nconscionability is not a basis for a separate claim for relief."); *see also*

*Barnard v. Home Depot U.S.A., Inc.*, 2006 WL 3063430, at *3 n.3 (W.D. Tex. Oct.

27, 2006) (citing numerous cases for the proposition that neither the common law

or the UCC allows affirmative relief for unconscionability).

To the extent unconscionability can be addressed affirmatively as part of a different -- that is, independent -- cause of action, such a claim "is asserted to prevent the enforcement of a contract whose *terms* are unconscionable." *Skaggs v. HSBC Bank USA, N.A.*, 2010 WL 5390127, at *3 (D. Haw. Dec. 22, 2010) (emphasis in original).[10] *Skaggs* dismissed a "claim" for unconscionability because it challenged only conduct such as "obtaining mortgages under false pretenses and by charging Plaintiff inflated and unnecessary charges," and "failing to give Plaintiff required documents in a timely manner," but not any specific contractual term. *Id.* Likewise, the FAC fails to challenge any particular term as unconscionable in an affirmative claim where the unconscionable terms may be relevant to that particular claim.

Plaintiff's Opposition only highlights these deficiencies of the unconscionability claim -- Plaintiff argues that the particular circumstances of how the loan was entered into (as opposed to any particular terms) require rescission of

---

[10] In *Skaggs*, this court noted in dicta that "at least one Hawaii court has addressed unconscionability when raised as a claim seeking rescission." 2010 WL 5390127, at *3 n.2 (citing *Thompson v. AIG Haw. Ins. Co.*, 111 Haw. 413, 142 P.3d 277 (2006)). The court did not mean to suggest that an affirmative claim for "unconscionability" without more is a proper cause of action. Even in *Thompson*, the operative complaint did not assert a separate *count* for rescission or unconscionability. *See Thompson*, 111 Haw. at 417, 142 P.3d at 281 (indicating the specific counts were for negligence, fraud, breach of duty, and unfair and deceptive trade practices under HRS § 480-2). In *Thompson*, the remedy of rescission was based on an independent claim.

38

the loan.  Doc. No. 62, Pl.'s Opp'n at 13.  Without suggesting that any particular

*terms* of the loan are unconscionable, Plaintiff has failed to state a claim.

Accordingly, the court GRANTS Defendants' Motion to Dismiss

Plaintiff's claim for unconscionability.

## K.    Unfair and Deceptive Acts or Practices (Count XI)

Plaintiff's original Complaint alleged that Defendants violated HRS

§ 480-2[11] by:

> 1.  Targeting financially unsophisticated and otherwise vulnerable consumers for inappropriate credit products.
>
> 2.  Failing to adequately disclose the true costs and risks of the subject loan and its inappropriateness for LONG.
>
> 3.  Making a refinance loan that resulted in little net economic benefit to LONG with the primary objective of generating fees.
>
> 4.  Making the loan based on the value of the collateral, without regard to LONG's ability to repay the loan.
>
> 5.  Failing to provide LONG with a timely Good Faith Estimate "GFE."
>
> 6.  Attempting to deprive LONG of his legal right to cancel the loan.

Doc. No. 1, Compl. ¶ 55.  The court dismissed this Count for failure to comply

---

[11]  HRS § 480-2(a) states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

with Rule 9(b).  *See Long*, 2011 WL 2650219, at *7.  The court, however, granted

Plaintiff leave to amend, and noted that Plaintiff had not asserted a § 480-2 claim

based on Wells Fargo's alleged false representations regarding Plaintiff's income

on the loan application prepared by Wells Fargo (the subject of his separately-pled

fraud claim).  *See id.* at *7, n.3.  The FAC now alleges Defendants violated § 480-2

by:

> a.  Targeting financially unsophisticated and otherwise vulnerable consumers for inappropriate credit products.
>
> b.  Failing to adequately disclose the true costs and risks of the subject loan and its inappropriateness for Plaintiff.
>
> c.  Falsifying the amount of LONG's income and source of income on the application it prepared.[12]
>
> d.  Failing to disclose that lender approved the subject loans based on Defendants' misrepresentation regarding Plaintiff's ability to repay the loan.
>
> e.  Falsely representing the amount LONG was required to pay.
>
> f.  Failing to disclose that paying off the existing mortgage loan would require payment of a prepayment penalty.

Doc. No. 47, FAC ¶ 107.

---

[12]  Again, during the October 17, 2011 hearing, Plaintiff switched theories and claimed that the loan application was prepared by a "notorious" mortgage broker, not Wells Fargo or one of its agents.

Plaintiff has thus re-alleged some unspecified actions of Defendants that were asserted in the original Complaint, but has also now included the alleged fraud-based conduct (e.g., falsifying Plaintiff's income on the loan application) as the basis of his chapter 480 claim.[13]   The FAC, however, fails to state a claim under § 480-2 because Plaintiff fails to state an underlying fraud claim.   That is, Plaintiff's § 480-2 claims that are based on fraud fail because the FAC lacks particularity.   *See Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1232-33 (D. Haw. 2010) (finding that HRS Chapter 480 claims sounding in fraud must be pled with particularity).   Moreover, the FAC does not allege what specific acts were committed by each Defendant, when acts were committed, and which Defendant committed them.   In short, the FAC does not contain sufficient factual detail to support a plausible § 480-2 claim.   Count XI is dismissed.

As analyzed above with Count III for fraud, because it is unclear whether further amendment of a fraud claim would be futile, this dismissal is

---

[13]   As for the other § 480-2 allegations, the FAC pleads no facts regarding a failure to disclose a prepayment penalty to support paragraph 107(f) of the FAC.  Likewise, the court's Order dismissing the original Complaint found allegations that a lender "targeted unsophisticated consumers," and "failed to adequately disclose costs and risks of a loan," were inadequate to state a claim for fraud.  *Long v. Deutsche Bank Nat'l Tr. Co.*, 2011 WL 2650219, at *7 (D. Haw. July 5, 2011).  Such allegations are "so vague that the court cannot determine what acts Plaintiff alleges are fraudulent."  *Id.*  They do not assert "'circumstances constituting fraud' such as the time, place, and nature of the alleged fraud, and how each Defendant participated in the fraud." *Id.* (citing *In re GlenFed, Inc., Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc)).

without prejudice.  Plaintiff may include a Chapter 480 claim in any attempted

amendment that is sought in regards to a fraud claim.

## L.    Failure to Act Consistent with the Implied Duty of Good Faith and Fair Dealing (Count XII)

Count XII alleges that Defendants "owed Plaintiff a duty to deal with

him in good faith and in a fair manner," and that Defendants breached that duty

through their various alleged misdeeds.  Doc. No. 47, FAC ¶¶ 114-15.

This claim asserts the tort of "bad faith."  *See Best Place v. Penn Am.*

*Ins. Co.*, 82 Haw. 120, 128, 920 P.2d 334, 342 (1996) (adopting tort of bad faith

for breach of implied covenant of good faith and fair dealing in an insurance

contract).  But, although bad faith is an accepted tort where the plaintiff is a party

to an insurance contract, the tort has not been recognized in Hawaii based upon a

mortgage loan contract.  *See Jou v. Nat'l Interstate Ins. Co. of Haw.*,

114 Haw. 122, 129, 157 P.3d 561, 568 (Haw. App. 2007) (explaining that "the

Hawaii Supreme Court emphasized that the tort of bad faith, as adopted in [*Best*

*Place v. Penn Am. Ins. Co.*, 82 Haw. 120, 128, 920 P.2d 334, 342 (1996),] requires

a contractual relationship between an insurer and an insured" (citations omitted)).

Moreover, although commercial contracts for "sale of goods" also

contain an obligation of good faith in their performance and enforcement, this

obligation does not create an independent cause of action.  *See Stoebner Motors,*

*Inc. v. Automobili Lamborghini S.P.A.*, 459 F. Supp. 2d 1028, 1037-38 (D. Haw. 2006).  And Hawaii courts have noted that "[o]ther jurisdictions recognizing the tort of bad faith . . . limit such claims to the insurance context or situations involving special relationships characterized by elements of fiduciary responsibility, public interest, and adhesion."  *Id.* at 1037 (quoting *Francis v. Lee Enters.*, 89 Haw. 234, 238, 971 P.2d 707, 711 (1999)).

Finally, even assuming a bad faith tort exists outside the insurance context, it is well-settled that "[a] party cannot breach the covenant of good faith and fair dealing before a contract is formed."  *Contreras v. Master Fin., Inc.*, 2011 WL 32513, at *3 (D. Nev. Jan. 4, 2011) (citing *Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 941 (2d Cir. 1998) ("[A]n implied covenant relates only to the performance of obligations under an extant contract, and not to any pre-contract conduct.")).  Hawaii follows this distinction.  *See Young v. Allstate Ins. Co.*, 119 Haw. 403, 427, 198 P.3d 666, 690 (2008) (indicating the covenant of good faith does not extend to activities occurring before consummation of an insurance contract).

Because the FAC alleges no "special relationship characterized by elements of fiduciary responsibility, public interest, and adhesion," the court finds that Plaintiff has failed to state a claim for bad faith.  Further, Plaintiff's allegations

43

regarding pre-contract activities (failing to disclosure terms, failing to conduct

proper underwriting, making an improper loan to Plaintiff), cannot be the basis of a

claim for bad faith.  *See id.*; *see also Larson v. Homecomings Fin., LLC*, 680 F.

Supp. 2d 1230, 1237 (D. Nev. 2009) ("Because Plaintiffs' claim revolves entirely

around alleged misrepresentations made before the [mortgage loan] contract was

entered into, [the bad faith claim] fails as a matter of law.").

The court therefore GRANTS Defendants' Motion to Dismiss Count

XII.

## M.     Negligent and/or Intentional Infliction of Emotional Distress (Count XIII)

Count XIII asserts that Defendants "owed Plaintiff a duty to avoid

negligently and/or intentionally inflicting severe mental and emotional distress

upon Plaintiff," and breached this duty through their various misdeeds.  Doc. No.

47, FAC ¶¶ 119-20.

Under Hawaii law, a plaintiff may recover for negligent infliction of

emotional distress ("NIED") "where a reasonable [person], normally constituted,

would be unable to adequately cope with the mental stress engendered by the

circumstances of the case."  *Doe Parents No. 1 v. State*, 100 Haw. 34, 69, 58 P.3d

545, 580 (2002) (citations and quotations omitted).  A claim for NIED "is nothing

more than a negligence claim in which the alleged actual injury is wholly psychic

and is analyzed utilizing ordinary negligence principles." *Id.* (citations and quotations omitted).  A plaintiff must allege "some predicate injury either to property or to another person in order himself or herself to recover for negligently inflicted emotional distress." *Id.* (citations omitted).  As such, subject to very limited exceptions, "an NIED claimant must establish, incident to his or her burden of proving actual injury (*i.e.*, the fourth element of a generic negligence claim), that *someone* was physically injured by the defendant's conduct, be it the plaintiff himself or herself or someone else." *Id.* at 69-70, 58 P.3d at 580–81 (citations omitted).

The FAC alleges that Defendants "mis[led] him, provid[ed] a loan product he was not properly qualified for, cause[ed] him to lose his savings, [and gave] him false hope he would qualify for a loan modification."  Doc. No. 47, FAC ¶ 120.  Neither these allegations nor the other portions of the FAC sufficiently identify Defendants' conduct that supports this NIED claim -- the allegations are simply too generalized and lacking in clarity to satisfy the requirements of Rule 8. Further, as explained above as to Plaintiff's other claims, Plaintiff has failed to adequately allege any legally cognizable non-contractual duty that Defendants may have to Plaintiff -- the FAC fails to assert a valid claim for negligence, breach of fiduciary duty, or bad faith.  Plaintiff has not alleged a predicate injury or threat of

immediate injury either to himself or to someone else.  *Doe Parents*, 100 Haw. at 69, 58 P.3d at 580.

To prove intentional infliction of emotional distress under Hawaii law, a plaintiff must prove four elements.

> First, the plaintiff must prove that the conduct was either intentional or reckless.  Second, the conduct in question must have been "outrageous."  Next, the plaintiff must establish causation, and finally, there must be evidence that the plaintiff suffered extreme emotional distress. A determination of "outrageous" conduct is fact specific. Hawaii courts have defined outrageous conduct as conduct "without just cause or excuse and beyond all bounds of decency."  If the alleged conduct does not rise to the level of "outrageous," dismissal is proper.

*Enriquez*, 2011 WL 3861402, at *26 (citations and some quotation marks omitted).

Applying this standard, Count XIII fails to allege a plausible claim for IIED.

Plaintiff has failed to state an actionable claim for fraud, breach of fiduciary duty, bad faith, NIED or violations of federal law.  Vaguely alleging he was misled, provided "a loan product he was not properly qualified for," and given "false hope he would qualify for a loan modification" are insufficient to rise to the level of outrageous conduct necessary for an IIED claim.

Accordingly, the court GRANTS Defendants' Motion as to Count XIII.

**N.      Violation of the Gramm-Leach-Bliley Act (Count XIV)**

Count XIV asserts that Defendants failed to provide Plaintiff the "mandatory notices" required by the Gramm-Leach-Blilely Act (the "GLBA"), 15 U.S.C. § 6801 et seq.  Doc. No. 47, FAC ¶¶ 124-25.

This claim fails -- the GLBA does not provide for a private right of action.  Rather, the GLBA is enforced by "the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission with respect to financial institutions and other persons subject to their jurisdiction under applicable law[.]" 15 U.S.C. § 6805(a); *see also Dunmire v. Morgan Stanley DW, Inc*., 475 F.3d 956, 960 (8th Cir. 2007) ("No private right of action exists for an alleged violation of the GLBA."); *Enriquez*, 2011 WL 3861402, at *16 (finding that a plaintiff cannot assert a private cause of action for violation of the GLBA); *Liu v. Wells Fargo Home Mortg. Inc*., 2011 WL 1362101, at *6 (D. Haw. Apr. 8, 2011).

The court therefore GRANTS Defendants' Motion to Dismiss Count XIV.

**O.      Violation of the Hawaii Constitutional Right of Privacy (Count XV)**

Lastly, the FAC alleges that Wells Fargo and Deutsche Bank violated Plaintiff's "Constitutional Right of Privacy" under the Hawaii Constitution by failing to provide notices and disclosing private financial information to non-

affiliated parties.  Doc. No. 47, FAC ¶ 131.  Plaintiff seeks damages for this violation.

This claim fails.  A constitutional claim requires "state action" and here any alleged wrongdoing was done by private parties, not by a government actor.[14]  *See, e.g.*, *Leong v. Hilton Hotels Corp.*, 698 F.Supp. 1496, 1503 (D. Haw. 1988) ("the provisions of the Hawaii State Constitution apply only to state action, not private action").  Additionally, "there is 'no independent state law claim for a violation of privacy in bank records under the Hawaii State Constitution.'" *Enriquez*, 2011 WL 3861402, at *20 (quoting *Flowers v. First Hawaiian Bank*, 289 F. Supp. 2d 1213, 1221 (D. Haw. 2003)).  Hawaii has "adopt[ed] the rule set forth in *United States v. Miller*, [425 U.S. 435, 440–43 (1976),] and follow[s] the majority of states in finding no reasonable expectation of privacy in personal bank records."  *State v. Klattenhoff*, 71 Haw. 598, 606, 801 P.2d 548, 552 (1990).

Count XV therefore fails to state a claim upon which relief can be granted.  The court therefore GRANTS Defendants' Motion to Dismiss Count XV

///

///.

---

[14]  Moreover, it is not even clear that a violation of the Hawaii Constitution is, by itself, actionable.  *See, e.g.*, *Mow by Mow v. Cheeseborough*, 696 F. Supp. 1360, 1365 (D. Haw. 1988) ("The Hawaii state appellate courts have yet to enunciate whether the State recognizes a cause of action for damages arising from a deprivation of rights under the Hawaii Constitution[.]").

**P.     Leave to Amend**

All Counts of the FAC have been dismissed.  As discussed above, the court will allow Plaintiff an opportunity to file a Motion seeking Leave to File a Second Amended Complaint as to claims for fraud and unfair and deceptive trade practices.  Plaintiff must submit a Motion for Leave to File a Second Amended Complaint (along with the proposed Second Amended Complaint) by November 4, 2011.  If Plaintiff fails to file a Motion by November 4, 2011, Counts III and XI will be dismissed with prejudice.

As to whether leave to amend should be granted as to other counts, the court previously instructed Plaintiff that he must plead facts as to each Defendant, set forth specific factual and legal allegations, and link the allegations to particular statutory or common law violations.  The FAC continues, however, to assert broad and vague theories of wrongdoing, to make the same claims that have repeatedly been dismissed in other actions in this court, or state claims that do not provide a private cause of action.  *See, e.g.*, *Cootey v. Countrywide Home Loans, Inc*., 2011 WL 4853333 (D. Haw. Oct. 12, 2011); *Cootey v. Countrywide Home Loans, Inc.*, 2011 WL 2441707 (D. Haw. June 14, 2011); *Rodenhurst v. Bank of Am.*, 2011 WL 4625696 (D. Haw. Sept. 30, 2011); *Anderson v. Cent. Pac. Home Loans, Inc*., 2011 WL 3439939 (D. Haw. Aug. 8, 2011); *Enriquez*, 2011 WL 3861402; and *Chun*,

49

2011 WL 3273120.

The court therefore finds that granting further leave to amend would be futile as to any counts against Defendants other that Count III for fraud and Count XI for violations of HRS Ch. 480.  *See*, *e.g.*, *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (concluding that district court acted in its discretion in not granting leave to amend where the plaintiffs failed to correct deficiencies previously outlined by the court); *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051-52 (9th Cir. 2008) (concluding that amendment would be futile where plaintiffs already filed an Amended Complaint containing the same defects as their original complaint and failed to state what additional facts they would plead if given leave to amend, or what additional discovery they would conduct to discover such facts).

## V.  CONCLUSION

For the reasons stated above, the court GRANTS Defendants' Motion to Dismiss the First Amended Complaint.  By November 4, 2011, Plaintiff may file a Motion for Leave to File a Second Amended Complaint, subject to limitations set forth above.  A proposed Second Amended Complaint must be included with such a Motion.  If no Motion seeking Leave to File a Second Amended Complaint is filed by November 4, 2011, the action will be dismissed and the Clerk of Court

will enter judgment in favor of Defendants and close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 24, 2011.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Long v. Deutsche Bank Nat'l Trust Co. as Trustee for Soundview Home Loan Trust 2006 WF-1 et al.*, Civ. No. 10-00359 JMS/KSC, Order Granting Defendants Deutsche Bank National Trust Company, as Trustee for Soundview Home Loan Trust 2006 WF-1 and Wells Fargo Bank N.A.'s Motion to Dismiss